1247·15    1248·15

NO. 14-13-01077-CR, 14-13-01078-CR

ORIGINAL

IN THE COURT OF

CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 24 2015

Abel Acosta, Clerk

---

JACQUALIEN GRANT

Appellant,

FILED IN
COURT OF CRIMINAL APPEALS

DEC 02 2015

Abel Acosta, Clerk

VS.

THE STATE OF TEXAS

Appellee.

---

PETITION FOR DISCRETIONARY REVIEW

---

# TABLE OF CONTENTS

PAGE

INDEX OF AUTHORITIES...............................................III

STATEMENT REGARDING ORAL ARGUMENT.......................................1

STATEMENT OF THE CASE...............................................1

STATEMENT OF PROCEDURAL HISTORY.......................................1

GROUND FOR REVIEW NUMBER ONE:

Was the evidence factually sufficient to support the jury's negative

finding on voluntary release?...................................2,3

GROUND FOR REVIEW NUMBER TWO:

Was the evidence sufficient to support the jury's negative finding on

voluntary release legally?.......................................4-6

ARGUMENT IN SUPPORT OF GROUND NUMBER ONE...............................2,3

ARGUMENT IN SUPPORT OF GROUND NUMBER TWO..............................4-6

PRAYER FOR RELIEF....................................................6

APPENDIX : Court of Appeals Opinion...........................

## INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE**

Brown v. State 98 S.W. 3d. 187...................................... 3,5

Carreon v. State 63 S.W. 3d. 37.................................... 2,3,5

Geesa v. State 820 S.W. 2d. 154.................................... 5

Harris v. State 790 S.W. 2d. 568, 587.............................. 6

King v. State 29 S.W. 3d. 556, 563................................. 4

Lavarry v. State 936 S.W. 2d. 690.................................. 2,3

Nolan v. State 102 S.W. 3d. 231, 236-37............................ 4

Oestrick v. State 939 S.W. 2d. 239................................. 2

Patterson v. State 121 S.W. 3d. 22................................. 3

Posey v. State 966 S.W. 2d. 57, 63................................. 5

Reyes v. State 938 S.W. 2d. 718.................................... 5

Smith v. STATE 36 S.W. 3d.134...................................... 6

Taylor v. State 268 S.W. 3d. 571, 592.............................. 6

Teer v. State 895 S.W. 2d. 845..................................... 2

Wiley v. State 820 S.W. 2d. 401, 409............................... 2,5

Williams v. State 718 S.W. 2d. 772................................. 2,5

Woods v. State 301 S.W. 3d. 327.................................... 4


**OTHER AUTHORITIES**

Texas Penal Code 15.04 (C)(1)...................................... 3

Texas Penal Code 20.04 (d)......................................... 3,4,5

Texas Rules of Appellate Procedure, Rule 44.2(a).................. 6

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument in this case will assist the Court in applying the facts and legality of evidence without relying solely on the fabricated trickery of the state representative. The state should not be allowed the opportunity to cure the issues raised in the instant petition without the contingency for appellant to cross-examine him at a hearing. Therefore, petitioner respectfully request oral argument.

## STAEMENT OF THE CASE

Appelant was charged with two charges of aggravated kidnapping and aggravated sexual assault. Both were alleged to have been committed on December 13, 2012.

Petitioner was found guilty of both charges by a jury on November 07, 2013, and sentenced to 20 years imprisonment for the sexual assault and life for the kidnapping following the jury's negative finding on the special allegation of Release In A Safe Place. Notice of appeal was timely filed.

## STATEMENT OF PROCEDURAL HISTORY

On August 25, 2015, The Fourteenth Court of Appeals affirmed the conviction/ sentence. Petitioner's appellate attorney did not file a motion for rehearing in the decision.

( 1 )

**GROUND FOR REVIEW NUMBER ONE:** Was The Evidence Factually Sufficient To Support The Jury's Negative Finding On Voluntary Release? ( Appellant's Brief pp. 9, 11-19; RR; Vol. 6 pp.13-15 )

**ARGUMENT IN SUPPORT OF GROUND NUMBER ONE:**

The trial records clearly demonstrates that the testimonial evidence supports the fact , in correlation with the physical evidence that the victim was released in a safe place. ( RR:Vol.4 pp. 42[1-25]; 43[1-25]; 44[1-25]; 45[1-9]; 100[18-21; RR: Vol6 pp. 13[14-25]; 14[1,2,18-25]; 15[1,12-18] )

The Court of Appeals failed to consult the trial transcripts to ascertain the facts surrounding petitioner's contentions that he did, in fact release the victim in a safe place. The courts have ruled that " The ordinary meaning of 'voluntary' in the phrase " voluntary release in a safe place " includes action of oneself: not constrained, impelled, or influenced by another; resulting from free choice, without compulsion or solicitation." ( Oestrick v. State 939 S.W. 2d. 239 )

In addition, " It seems appropriate that any judgment on finding regarding " voluntary release " must be viewed, weighed, and determined solely from the condition of the accused and not as to the possiblilities within speculated grasp of the victim." ( Carreon v. State 63 S.W. 3d 37 )

The fact that the complainant... lived to testify at trial focuses our discussion solely on the question of whether or not complainant was voluntarily released in a safe place." ( Wiley v. State 820 S.W. 2d401, 409 ) Voluntary release should not be weighed from a standpoint of physical condition of a victim and that victim's ability to ultimately vacate or escape the immediate prevalence of the accused. ( id at 411 )

Petitioner proved during trial that he released the victim in a safe place by handing her all of her personal belongings including her car keys, purse, identification, and clothing. Petitioner also walked her out of the apartment and said goodbye as he walked in the opposite direction. ( RR: Vol. 6 pp. 14[15-25] and 15[1-21] ) ( RR: Vol. 4 pp. 42[19-25]; 43[1-25]; 44[1-25]; 45[1-10] )

For the prosecution to contend that because this was the same place where victim was abducted automatically makes it an " unsafe place " is a conflict of law as the courts have decided " the state argued that as a matter of law , a place cannot be safe if a portion of the crime occurred there, we cannot agree with the state's analysis." ( Williams v. State 718 S.W. 2d 772 ) ( RR: Vol 6 pp. 23[5-25] and 24[1,2] ) In other words, just because a crime was alleged to have been perpetrated at a particular location or neighborhood does not automatically render that place less safe.

Defendant voluntarily released victim...by walking away from victim in her car, even if defendant did so under fear of police apprehension; thus, aggravated kidnapping by definition was second degree, not first degree felony since he released victim in a safe place. ( Lavarry v. State 936 S.W. 2d 690; Teer v. State 895 S.W. 2d 845 )

Therefore, the evidence is not sufficiently factual to support the jury's negative finding on voluntary release, but on the contrary, the evidence is factually sufficient to support a positive finding on voluntary release.

( 2 )

The victim in the instant case knew she was free from captivity and free to leave, free to utilize her cell phone to contact a trusted friend, and free to drive a short distance to receive assistance. The courts have ruled " in aggravated kidnapping prosecution, in order for defendant to avail himself of the mitigating factors that he voluntarily released victim in a safe place, defendant must have performed some overt and affirmative action that brings home to the victim that he/she has been fully released from captivity, and such release must occur in a place and manner which realistically conveys to the victim that he/she is now free from captivity and is now in circumstances and surroundings where aid is readily available." (Carreon v. State 63 S.W. 3d. 37)

The prosecution consistently attempted to divert attention away from this very obvious mitigating factor of voluntary release by referring to the vict- im's claim that she promised defendant she would not go to police, but, in fact, the Court of Criminal Appeals ruled that that very promise is incentive for a suspect to release victim in a safe place ( Lavarry v. State 936 S.W. 2d. 690 ).[Vol.6 pg. 21(9-21) ]

The Texas legislature did not define the term " voluntary " within section 20.04(d). Under a " broad interpretation " an act is voluntary " only if it was the spontaneous product of the actor's free will, uninfluenced by ano- ther's persuasion, coercion, or solicitation." ( Brown v. State 98 S.W. 3d 187 )

The Court of Criminal Appeals explained that this broad interpretation is inconsistent with the plain laguage of section 20.04(d), which provides an incentive to kidnappers to release their kidnap victims... and instesd ado- pted a narrow interpretation... in Texas Penal Code 15.04 esp. ( C ) ( 1 ) ( Patterson v. State 121 S.W. 3d 22 )

In conclusion, this case should be granted a discretionary review be- cause it is petitioner's contention that the Court of Appeals' decision con- flicts with other court of appeals' decisions on the same issue and the Cou- rt of Appeals decision also conflicts with applicable decisions of the Court of Criminal Appeals on the same issues that were resolved in favor of the petitioner. Petitioner has demonstrated that the jury's negative finding was not in accordance with the factual evidence presented to them and that they were ultimately wrongly influenced by the prosecution with faulty instruc- tion on the definition of " Voluntary Release ".

( 3 )

## GROUND FOR REVIEW NUMBER TWO: WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE JURY'S NEGATIVE FINDING ON VOLUNTARY RELEASE LEGALLY? (Appellant's Brief pp. 9, 10, 21-29 )

## ARGUMENT IN SUPPORT OF GROUND NUMBER TWO:

The appellate records will clearly illustrate that the trial court and the Court of Appeals missed an opportunity to ensure that the appellant's rights as a matter of law was afforded him by overlooking the mitigating factors of legal standing that he released the victim in a safe place.

The entirety of proving release in a safe place was on the defense and never shifted to the State ( RR: Vol. 6 pg. 13[18-25]; pg. 14[1,2] ) " as a threshold matter for review, appellant contends that once he introduced some evidence of voluntary release in a safe place, the burden of pursuasion then shifted to the State " to convince the fact-finders that the place where the accuse left his victim was not safe." " " Appellant is incorrect. The plain language of the statue places the burden of proof on the accuse ( Penal Code § 20.04 (d) ). " At... punishment phase the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmation by a preponderance of the evidence, the offense is a felony of the second degree." Furthermore, this court has held that the defendant, indeed, has the burden of proof to show voluntary release in a safe place." ( Nolan v. State 102 S.W. 3d. 231, 236-237 )

The greater weight and preponderance of the evidence does not support the negative finding of the jury. The fact that the victim was able to walk to her car, drive away without further harm, utilize her cell phone, arrive at a nearby location to receive help, demonstrates by her own testimony that she felt safe and was in fact safe enough to do so. ( RR: Vol. 6 Pg. 42 [19-25]; Pg. 43[1-25]; Pg.44[1-25]; Pg. 45[1-10] ) As the court ruled in King v. State 29 S.W. 3d. 556, 563 " we must decide if, after considering all of the evidence relevant to this issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust."

At no time does the State have the burden of proof to show that the Petitioner did not release victim in a safe place. The trial court did just that by allowing the prosecution to mislead the jury into believing their misstatement of the law in violation of the law as cited by Wood v. State 301 S.W. 3d. 327 " It is incumbent upon the state to prove beyond a reasonable doubt that defendant did not perform this affirmative act allowing

( 4 )

mitigation under Penal Code 20.04(d). [ Wiley v. State 820 S.W. 2d. 411 ] [ Reyes v. State 938 S.W. 2d. 718] [ Williams v. State 718 S.W. 2d. 772 ] [ State's Reply To The Applicant's Supplimental Brief, pg. V ]

Furthermore, this case should be granted review to determine the justification of Petitioner's request to have the conviction/ sentence reversed because the trial Court failed to give a proper detailed jury instruction on definition of voluntary as requested by defense counsel. ( RR: Vol. 6 pp. 18[1-25]; 19[1-22]; 20[12-18]; and 21[5-8] This failure confused the jury into believing they could consider the prosecution's " version " of the definition, which, in turn, confused the jury, but ultimately prejudiced the Petitioner.

According to the Court of Appeals ruling, voluntary release is "...even if induced by the victim falsely promising not to report crime to police." ( Brown v. State 98 S.W. 3d. 180 ) The State mislead the jury by stating that the release was not voluntary " because she promised not to go to the police." ( RR:Vol. 6 pg. 21[23-25]; pg. 22[1,2]; Appellant's Brief pp. 12, 13 )

In order to be entitled to such an instruction, a defendant must object to the absence of such an instruction or otherwise bring the matter to the attention of the trial court, and the evidence at the punishment stage must raise the issue ( Carreon v. State 63 S.W. 2d. 37 **Citing Posey 966 S.W. 2d. 57,63** ). Petitioner fulfilled this requirement when defense counsel " requested such an instruction on two different occasions. We hold he sufficed to bring the matter to the trial court's attention meriting appellate review. Failure to submit instruction...to jury in any case where burden of proof requires jury to find guilty beyond reasonable doubt is automatic reversal." is the holding by the Court of Criminal Appeals in Geesa v. State 820 S.W. 2d. 154, which created an absolute system requiring that instruction be given in all such cases ( citing Reyes 938 S.W. 2d. 718; Wiley 820 S.W. 2d. 411 )

In conclusion, criminal convictions are so serious in their consequences that it is felt that an accused person should be freed, if there is any fair or reasonable doubt about his guilt, even though there seems to be considerable likelyhood that he did commit the crime ( Black's Law Dictionary under Greater Weight Of Evidence; " not necessarily established by the number of witnesses testifying to a fact but by the evidence that has the most convincing force;" Superior Evidence; ( superior evidentiary weight ) " though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other"; Preponderance Of Proof; "balance of probability."

Under Texas Rules of Appellate Procedure, a substantial right is effected when the error has a substantial and injurious effect or influence ( Rule 44.2(a). [ Taylor v. State 268 S.W. 3d. 571, 592; Smith v. State 36 S.W.3d. 134; Harris v. State 790 S.W. 2d. 568, 587-88 ]

In conclusion, the forementioned fact of law renders this petition eligible for review and ultimately to be assessed a reversal and remand back to the trial court for retrial/ re-sentencing. Namely because petitioner has shown that the Court of Appeals' decision conflicts with other decisions and rulings of matters pertaining to the very issue he asserts in his petition.

## PRAYER FOR RELIEF

Wherefore, all premises considered, Petitioner humbly prays that this honorable Court grants review of his petition and reverse the conviction/ sentence as demonstrated by case law.

( 6 )



August 25, 2015



## JUDGMENT

## The Fourteenth Court of Appeals

JAQUALIEN GRANT, Appellant

NO. 14-13-01077-CR

V.

NO. 14-13-01078-CR

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgments. The Court orders the judgments **AFFIRMED**.

We further order this decision certified below for observance.



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NOS. 14-13-01077-CR
## 14-13-01078-CR

JAQUALIEN GRANT, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause Nos. 1386096 & 1386097**

## O P I N I O N

In three issues, appellant Jaqualien Grant appeals his convictions for aggravated kidnapping and sexual assault. Appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding that he did not release complainant in a safe place. Appellant further contends that the trial court abused its discretion in admitting evidence of prior extraneous offenses.[1] We affirm.

---

[1] Appellant was indicted separately for aggravated kidnapping and sexual assault. The

### Background

Complainant lived in Pasadena, Texas. She testified she became lost driving in Houston, so she pulled into an apartment complex to check her cell phone's GPS. As she sat in her car, a tall man opened her car door and ordered her to "listen or [he would] hurt [her]." The man had one hand in his pocket, and complainant thought he might have had a weapon. She turned off the ignition, and the man grabbed her arm and led her to an abandoned apartment. Another man waited in the apartment.[2]

After taking her purse and demanding her ATM pin number, the men ordered complainant to undress. She complied, and they locked her in a closet. Both men then took turns sexually assaulting her. After the assaults, the men forced complainant to wash herself repeatedly. Complainant believed the men would not let her go. The tall man told complainant to give him a reason to let her go. She told them that she would not call the police because she had worked as an escort and did not want to involve the police. She also told the tall man that she had a boyfriend waiting for her at home who would call the police if she did not make it home on time.

The men obtained her parents' contact information from her phone and threatened that if complainant went to the police, they would hurt her parents. The tall man returned complainant's keys, phone and purse, opened the apartment door to let complainant out, and walked away. It was now dark outside. Complainant

---

two cases were tried together. Appellant initially appealed only the aggravated kidnapping conviction. We granted appellant leave to file a brief raising any issues pertinent to the sexual assault conviction and postponed the original submission date. Appellant filed a supplemental brief asserting his issue regarding the extraneous offenses as to both convictions. Even though appellant was not permitted to assert this new issue as to the aggravated kidnapping conviction, we analyze both, *infra*, and overrule the issue.

[2] Complainant did not identify appellant at trial because she said she never saw his face. She differentiated between her two assailants by referring to one as "a really tall man."

2

walked back to her car and drove away. She called a friend, who told her to call the police. She drove to a McDonald's, called the police, and was taken by ambulance to the hospital. DNA from a vaginal swab collected from complainant showed that appellant was the source of the DNA to a reasonable degree of scientific certainty.[3]

The State presented evidence at trial of extraneous offenses committed by appellant two weeks prior to the charged offenses. A woman was exiting a CVS Pharmacy when a man approached her and ordered her at gunpoint into her car. He got into the car and forced her to drive to a hotel. He took her to a room and forced her to undress. He took her ATM cards and phone and forced her to take off her clothes, make a video of their having intercourse several times, and sit in a bathtub with water and soap for hours to clean herself. The man went through her phone and took down numbers from people he believed to be family members. He said if she went to the police, her family would be in danger. The woman finally got away. She identified appellant in court as the man who kidnapped and sexually assaulted her. Also, DNA from a vaginal swab collected from the woman showed that appellant was the source of the DNA to a reasonable degree of scientific certainty.

The jury found appellant guilty of aggravated kidnapping and sexual assault. In response to the jury question "Do you . . . find . . . that [appellant] voluntarily released [complainant] in a safe place?" the jury responded, "We do not." The jury assessed punishment at life imprisonment for aggravated kidnapping and 20 years' confinement for sexual assault.

### Discussion

In three issues, appellant argues the jury's finding that he did not release

_____

[3] DNA was obtained from a vaginal swab, a tampon, and a swab of complainant's breast. The State's expert at trial confirmed that appellant was the source of DNA from the vaginal swab to a reasonable degree of scientific certainty.

complainant in a safe place is not supported by legally and factually sufficient evidence and the trial court abused its discretion in admitting evidence of extraneous offenses.

## I.    Voluntary Release in a Safe Place

In his first and second issues, appellant challenges the legal and factual sufficiency of the evidence in support of the jury's finding that he did not release complainant in a safe place. The punishment level for aggravated kidnapping is reduced from a first-degree felony to a second-degree felony if the kidnapper "voluntarily release[s] the victim in a safe place." *See* Tex. Penal Code § 20.04(d). Voluntary release in a safe place is an affirmative defense that may be evaluated for legal and factual sufficiency.[4] *See Butcher v. State*, 454 S.W.3d 13, 18, 20 (Tex. Crim. App. 2015).

In a legal-sufficiency review of an affirmative defense, we first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *See id.* at 20. The finding of the factfinder rejecting a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense and no reasonable factfinder was free to think otherwise. *Id.*

In a factual-sufficiency review of a finding rejecting an affirmative defense, unlike in a legal-sufficiency review, we examine the evidence in a neutral light. *See id.* We cannot overturn a finding rejecting a defendant's affirmative defense unless, after setting out the relevant evidence supporting the verdict, we clearly

---

[4] Affirmative defenses may be evaluated for legal and factual sufficiency, even after *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), which abolished factual-sufficiency review as it applies to criminal convictions. *Butcher*, 454 S.W.3d at 20.

4

articulate why the verdict is so much against the great weight of the evidence as to be "manifestly unjust, conscience-shocking, or clearly biased." *See id.*

The determination of whether a place is safe is fact-specific. *See id.* at 16-19. The defendant has the burden of proof to establish the safety of the place of release. *Nolan v. State*, 102 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Appellant argues that the jury's finding was not supported by legally and factually sufficient evidence because complainant was released in a safe place.[5] Complainant was released after dark from the abandoned apartment where she had been held and assaulted. She had her cell phone and keys, and her car was in the parking lot of the apartment complex. She returned to her car and drove to a McDonald's where she called the police, and an ambulance arrived and transported her to the hospital. Appellant argues that because the apartment complex was along a major thoroughfare near businesses and complainant was able to drive away and call the police, the evidence conclusively shows she was released in a safe place and the jury's finding is against the great weight of the evidence.

The State asserts that the factors articulated in *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.—Dallas 1996, pet. ref'd), weigh in favor of the jury's finding. The Court of Criminal Appeals recently has stated that courts of appeals may consider a list of factors similar to the *Lavarry* factors to determine whether a complainant was released in a safe place, but the Court noted these factors are "merely nonexclusive aids" to guide our analysis under the totality of the circumstances of each case. *See Butcher*, 454 S.W.3d at 19.

---

[5] Appellant also argues that the jury's finding was not supported by legally or factually sufficient evidence because he *voluntarily* released complainant. We need not address whether appellant voluntarily released complainant because we conclude appellant has not established that he released complainant in a safe place.

5

Keeping in mind the Court of Criminal Appeals' admonition that these factors are only an aid in our analysis, we address the evidence—or lack thereof—of certain factors:

***Remoteness of Location.*** Complainant was released from an abandoned apartment. Appellant contends, however, that the apartment complex was located "in a populated area containing storefronts and businesses." Appellant relies on two photographs admitted at trial showing a pawn shop near the apartment complex. There is no evidence in the record of whether any nearby businesses, including the pawn shop, were open when complainant was released after dark or how populated the area was at that time or any other time.

***Proximity of Help.*** Appellant asserts that complainant "drove a short distance from the complex to a McDonald's where she stopped and called the police." But there is no evidence in the record of how far complainant's car was from the apartment where she was released or how far she drove to the McDonald's. In addition, there is no evidence that anyone other than complainant and her attackers were near or in the apartment complex at the time of her release, so there is no evidence of nearby help.

***Time of Day.*** Complainant was released after dark at 7 p.m.

***Condition of Complainant.*** Complainant's physical injuries were minor, but she suffered mental and emotional harm as shown by her testimony that she "broke down" after calling her friend, was barely able to communicate with him, and resisted hanging up and calling 911 because she was afraid.

***Character of the Location and Surrounding Neighborhood.*** An officer testified that while the location where complainant was released was "not a dangerous part of town to be in," it likewise was "not one of the safer parts of

town." He agreed with the prosecutor that it was a "high-crime, high-narcotics neighborhood." That complainant was forced to walk from the abandoned apartment through the parking lot to her car where she was abducted also supports an inference that the character of the location was not safe. *See id.* at 16, 19 (acknowledging that depending on the circumstances, being released where one was abducted can support an inference that one was not released in a safe place, particularly when the area was "desolate," among other things).

***Complainant's Familiarity with the Location.*** Complainant had pulled over in the apartment complex parking lot to consult her GPS because she was lost. After the assault, she had to be given directions to the McDonald's over the phone by her friend, and she was not very familiar with Houston in general.

We agree with the State that these factors support an inference that complainant was not released in a safe place. She was released after dark from an abandoned apartment in a "high-crime, high-narcotics neighborhood" that was not familiar to her and drove some distance to a business to seek help. As she left, she "broke down," "was shaking," "was crying," and "was scared," and thus the jury could infer she did not feel safe when she was released. *See id.* at 16.

Appellant argues, however, that this case is like *Storr v. State*, 126 S.W.3d 647, 652-53 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), in which we held that the defendant's attorney rendered ineffective assistance because he did not request a jury instruction on voluntary release in a safe place. In that case, we concluded the evidence conclusively established that the complainant was released in a safe place because it was at the post office where he had been abducted near his college, thus no conceivable trial strategy could explain counsel's failure to request the instruction. *Id.* at 653. In contrast, the complainant in this case was released from an abandoned apartment after dark, and appellant presented no

7

evidence that any surrounding businesses were open at that time. *See Butcher*, 454 S.W.3d at 19. Moreover, in this case, the jury found that complainant was not released in a safe place, whereas in *Storr*, the issue was not presented to the jury. *See Storr*, 126 S.W.3d at 653. Accordingly, *Storr* is distinguishable from this case.

In light of the totality of the circumstance of this case, we conclude appellant failed to establish that the jury's finding was not supported by legally or factually sufficient evidence.[6] The record contains more than a scintilla of evidence to support the jury's finding that the place where appellant released complainant was not safe. *See id.* at 20. Accordingly, appellant has not conclusively proved that he released complainant in a safe place such that no reasonable factfinder was free to think otherwise. Likewise, the jury's finding rejecting appellant's affirmative defense was not so against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. Accordingly, the evidence was legally and factually sufficient to support the jury's finding that appellant did not voluntarily release complainant in a safe place.

We overrule appellant's first and second issues.

## II. Admission of Extraneous Offense Evidence

In his third issue, appellant complains that the trial court abused its discretion in admitting evidence of his extraneous offenses of aggravated

---

[6] *See, e.g., Simmons v. State*, No. 05-13-01590-CR, 2015 WL 534447, at *3 (Tex. App.— Dallas Feb. 9, 2015, no pet.) (mem. op., not designated for publication) (holding evidence was sufficient to support jury's finding that complainant was not released in a safe place when the defendant pushed her out of a van at a gas station during nighttime business hours even though the gas station was located off a main highway near other locations that were also open); *Nolan*, 102 S.W.3d at 238 (holding defendant did not establish safety of place of release when complainant was released at a middle school between 4:20 and 5:00 p.m. and evidence did not show, among other things, character of neighborhood on day in question, safety of surrounding area, whether release was during school hours or at a time when school activities were ongoing, whether people were in the area or victim was familiar with campus, or whether surrounding area was "generally safe or crime-ridden").

8

kidnapping and sexual assault. Appellant argues the evidence was inadmissible under Rule of Evidence 404(b), as evidence of other crimes is generally inadmissible, and under Rule of Evidence 403, because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State counters that the evidence was offered as an exception to the general rule of 404(b) to refute appellant's defense that complainant consented to the encounter and it was not unfairly prejudicial under Rule 403.

We review a trial court's ruling under the Rules of Evidence for an abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment. *Id.* We will uphold a trial court's ruling on the admissibility of evidence as long as the ruling was within the zone of reasonable disagreement. *Id.*

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character. Tex. R. Evid. 404(b). However, this evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Martin*, 173 S.W.3d at 466 (citing Rule 404(b)). This list is illustrative, not exhaustive. *Id.* Accordingly, a party may introduce extraneous offense evidence if (apart from character conformity) it logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Id.* Moreover, relevant evidence may be excluded if its probative value is substantially

outweighed by a danger of, among other things, unfair prejudice. Tex. R. Evid. 403. Extraneous-offense evidence is admissible under both Rules 404(b) and 403 if the evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and the probative value of the evidence is not substantially outweighed by unfair prejudice. *Martin*, 173 S.W.3d at 467.

## A. Defensive Theory of Consent Raised by Appellant

Extraneous-offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). As an initial matter, we decide whether appellant raised the defensive theory of consent at trial.[7] During the State's direct examination of complainant, she testified that she had previously worked as an escort but stopped doing so approximately six months prior to the incident in question. Appellant's cross-examination of complainant focused on her past as an escort. Appellant introduced an exhibit of online advertisements for escort services in several Texas locations, including Houston, all containing pictures of complainant along with her pseudonym. In response to the State's relevance and Rule 403 objections to the admissibility of the exhibit, defense counsel explained: "[O]ur theory of the case is . . . she was working as an escort in Houston when this incident happened. . . . They're relevant as to consent. They're relevant as to our theory of the case that . . . there was a consensual act between her and the defendant at a certain time at a certain location." The trial

---

[7] Appellant was not given permission by this court to raise in his amended brief the new issue of extraneous evidence in his aggravated kidnapping conviction. As a matter of judicial economy, however, we will analyze the admissibility of the evidence as to both sexual assault (lack of consent to participate in sexual act is an element of the crime) and aggravated kidnapping (restraint without consent is an element of the crime).

court admitted the evidence with the photographs of complainant redacted.

The State then offered extraneous offense testimony regarding the other aggravated kidnapping and sexual assault committed by appellant to rebut appellant's theory that complainant consented to the encounter with appellant. Defense counsel objected, arguing that he had not opened the door to the issue of consent because he never asked complainant if she engaged in consensual sexual relations with appellant. He also argued that he had offered the evidence regarding complainant's being an escort to rebut the idea that she had been kidnapped: "I'm trying to show that possibly she went to that apartment as an escort." The State argued that appellant's line of questioning regarding complainant's profession put consent at issue as to both charged offenses. After a hearing outside the presence of the jury, the trial court determined that the extraneous offense testimony was admissible to rebut the defensive theory of consent.

On appeal, appellant argues that the State, as the proponent of the extraneous offense evidence, did not demonstrate that appellant raised the issue of consent through his line of questioning related to complainant's status as an escort.[8] Considering the arguments and evidence elicited by appellant at trial, we conclude the trial court did not abuse its discretion in determining that consent was his defensive theory as to both offenses. *See, e.g., Fields v. State*, No. 03-04-00422-CR, 2005 WL 1650985, at *6 (Tex. App.—Austin July 14, 2005, pet. ref'd) (mem. op., not designated for publication) (considering defendant's opening statement and testimony elicited during cross-examination to determine whether defendant opened door by implying complainant consented to sexual activity).

---

[8] The State also argued below that appellant opened the door to the extraneous offenses by raising the issue of fabrication, i.e., that complainant was working as an escort at the time of the incident in question.

11

Defense counsel did not present an opening statement, but he cross-examined complainant extensively about when and where she worked as an escort and for how long. He then questioned her about the advertisements that the trial court had admitted outside the presence of the jury. She admitted that the advertisements included her pseudonym and that pictures of her had been attached to them. The latest advertisement had been dated approximately two weeks before the incident in question. As mentioned above, defense counsel argued successfully that the advertisements should be admitted because they were relevant to show "there was a consensual act between [complainant] and the defendant."

Defense counsel also questioned complainant about how she paid her bills. Complainant had testified on direct examination that she owned a lingerie business. Defense counsel asked her how much money she made in that business and how much her monthly bills were, suggesting she did not make enough money through her lingerie business to pay her bills.

He further asked complainant whether she had suffered any vaginal tearing from the incident. When defense counsel tried to retract his assertion to the trial court that appellant was relying on a defensive theory of consent to the sexual assault, the State argued that the question about vaginal tearing also was "designed to go towards the issue of consent."

We agree with the State that appellant's cross-examination of complainant, standing alone, was enough to open the door for the State to present evidence rebutting appellant's defensive theory of consent because the gist of the cross-examination was that complainant was working as an escort when she went to the apartment and thus consented to the sexual encounter. *See id.* Moreover, a consideration of the appellant's arguments, testimony elicited on cross-examination, and evidence presented at trial, affirms that appellant was attacking

12

complainant's credibility as to consent.

During his case, appellant presented testimony from his cousin that the month before the incident, the cousin saw the complainant in the parking at the hotel where appellant was staying, implying that she was there to see appellant. In his closing argument, defense counsel focused on the testimony from appellant's cousin. Regarding complainant, defense counsel also said:

> And what you know about her and the fact that she was, from age 18 to 22, a dancer and a [sic] escort where she admitted going to hotel rooms and meeting guys but she doesn't remember the name of the man who set up all of her details, that's for you to evaluate if that means anything to you or not. . . .

> You have to decide, do you give her the same credibility you give the girl next door in the same situation. You have to weigh everything about her and make a decision based on her story.

We conclude appellant raised the defensive theory that complainant consented to accompanying appellant and engaging in intercourse with him.[9] We now address whether the State was entitled to put on the evidence of extraneous offenses to rebut appellant's defensive theory of consent.

### B. Extraneous Offense Evidence Similar Enough to be Admissible under Rule 404(b)

Courts have recognized that a defendant's modus operandi—i.e., a defendant's "distinctive and idiosyncratic manner of committing criminal acts"—is an exception to the general rule excluding extraneous-offense evidence if the modus operandi tends to prove a material fact at issue other than propensity for committing crimes. *See Casey*, 215 S.W.3d at 880–81. When a defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without

---

[9] Consent likely was appellant's only available defense, as DNA evidence linked him to the crime.

the consent of complainant. *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). Thus, modus operandi evidence has been used to prove lack of consent as a fact at issue when it is an element of the charged offense. *See Casey*, 215 S.W.3d at 880–81; *Martin*, 173 S.W.3d at 466–68; *Rickerson v. State*, 138 S.W.3d 528, 531–32 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

In this case, lack of consent is an element of both charged offenses. *See Martin*, 173 S.W.3d at 466 & n.1 (noting lack of consent "is the essence of the offense of sexual assault"); *Prudholm v. State*, 333 S.W.3d 590, 598 (Tex. Crim. App. 2011) (listing elements of aggravated kidnapping to include "restrict[ing] a person's movements without consent"). Appellant argues the extraneous offenses should not have been admitted because they are not similar enough to show appellant's modus operandi.

In *Martin*, the complainant testified that she became acquainted with Martin at a private club, where he falsely told her he was a deputy sheriff. 173 S.W.3d at 464. She agreed to meet him at a mobile-home park several days later, but once she arrived, he took her to an unoccupied mobile home and forced her to have intercourse with him. *Id.* Martin testified that their intercourse was consensual. *Id.* at 465. The State called a rebuttal witness who testified that, several months before the alleged offense, she met Martin through a telephone "date line." *Id.* She stated that Martin told her he was a detective. *Id.* He later met her at her apartment and sexually assaulted her. *Id.* Because Martin falsely claimed to be a law enforcement officer to "pick up" both the complainant and the extraneous-offense witness, both women agreed to meet Martin in a residential area, both women were assaulted on the first face-to-face meeting after initial contact, and both assaults took place in a residence, the court held that the extraneous-offense testimony was admissible as sufficiently distinctive modus operandi evidence. *See id.* at 468.

14

Likewise, the extraneous-offense testimony the State presented at trial is sufficiently distinctive and similar to the charged offenses to qualify as modus operandi evidence relevant to the issue of consent. *See id.* These incidents occurred within two weeks of each other. Both women were forcibly removed from their cars to a private location to be sexually assaulted. Both women were held for extended periods and sexually assaulted multiple times. In both instances, appellant went through the women's purses and took their ATM cards and also went through their phones for contact information. Appellant also threatened to harm the victims' families if they reported the incidents to authorities. Both women were forced to wash themselves, and appellant expressed doubts that they were cleaning themselves well enough.[10]

Appellant argues that these two incidents are not similar enough to support the trial court's finding of modus operandi because, in the first incident, appellant forced the woman to make videos and smoke marijuana, had a gun, and forced the victim to drive to a hotel. In the second incident, there were two attackers. However, the similarities between the two offenses are striking and unusual. The appellant's preoccupation with the victims' ATM cards, looking through their phones and threatening their family members, and forcing the victims to wash themselves multiple times is significant. Given the remarkable similarities between the charged offense and the extraneous offense testimony in this case, we cannot say the trial court abused its discretion in admitting the extraneous offenses unless the evidence was unduly prejudicial. *See Casey*, 215 S.W.3d at 881; *Martin*, 173

---

[10] Moreover, appellant apparently targeted women with a history of being escorts. Defense counsel told the trial court, "[W]e have been told during discovery that [the other victim] did advertisements in Georgia as an escort and I want to ask her about that." The trial court sustained the State's objection to that line of questioning. The State also presented evidence of another extraneous offense involving another escort to the trial court in a hearing outside the presence of the jury, but decided not to offer the evidence in the presence of the jury.

15

S.W.3d at 648.

## C. Extraneous Offense Evidence Not Unduly Prejudicial under Rule 403

We presume that the probative value of evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *Cargill v. State*, No. AP-76,819, 2014 WL 6477109, at *6 (Tex. Crim. App. Nov. 19, 2014). It is therefore the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In reviewing the trial court's balancing determination under Rule 403, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Id.*

Determining whether the probative value of evidence is outweighed by the danger of unfair prejudice requires balancing the following factors: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous-offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Bargas v. State*, 252 S.W.3d 876, 892-93 (Tex. App.—Houston [14th Dist.] 2008, no pet.). When the record is silent as to the trial court's balancing of these factors, we presume the trial court conducted the balancing test. *Id.* at 893.

***Strength of the Evidence.*** The first factor weighs strongly in favor of admissibility because the evidence was relevant to the issue of intent. *See id.* (holding extraneous-offense evidence was probative to rebut appellant's theory that allegations were fabricated). As set forth above, appellant put his intent to commit the charged offenses at issue by raising a defensive theory of consent. *See Rubio*, 607 S.W.2d at 500–01. The testimony regarding the extraneous offenses rebuts

16

appellant's defensive argument that complainant's testimony was not credible and that she consented to the sexual encounter. Because the extraneous-offense evidence was so similar to the charged offense, it was highly probative as modus operandi evidence to rebut the issue of appellant's intent to commit the offenses. *See Casey*, 215 S.W.3d at 882; *Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985).

*Potential to Impress Jury and Time Needed to Develop Evidence.* The second and third factors also weigh in favor of admissibility. The extraneous offense was no more heinous than the crime for which appellant was indicted, so the testimony was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996). Any danger the testimony may have impressed the jury in a prejudicial way is overshadowed by its probative value. *See Bargas*, 252 S.W.3d at 893 (viewing prejudicial tendencies of extraneous-offense testimony in sexual assault case as outweighed by its probative value when it was used to rebut a defensive issue). Furthermore, the testimony took less than an hour of the two-day guilt-innocence proceedings.

*State's Need for Testimony.* The State's need for this testimony was also significant, favoring admissibility under the fourth factor. Appellant urges that the jury could infer a lack of consent from the facts that complainant called the police, went to the hospital, and had physical injuries and her personal identification was stolen. But none of this evidence tends to discredit appellant's argument that appellant voluntarily went to the apartment building as an escort. *See Casey*, 215 S.W.3d at 884 ("[W]ithout the benefit of the [extraneous offense evidence, the complainant's] testimony could have been easily discounted by the jury due to her

17

intoxication and intermittent recollection of events."). Because appellant contested complainant's allegations on a theory of consent, the State demonstrated the need to counter that theory.

Considering the above factors, we conclude the probative value of the extraneous-offense evidence was not substantially outweighed by unfair prejudice. The evidence was probative in assessing whether complainant consented to the sexual encounter. The State needed the evidence to counteract the defensive theory that complainant went to the apartment as an escort. The trial court did not abuse its discretion under Rule 404(b) or Rule 403 in admitting the extraneous-offense evidence. *See Bargas*, 252 S.W.3d at 893; *see also Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990).

We overrule appellant's third issue.

We affirm the judgment of the trial court.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Christopher, Jamison, and Busby.
Publish — TEX. R. APP. P. 47.2(b).

18

GRANT. JAQUALIEN # 1897465
JAMES V. ALLRED UNIT
2101 FM 369 NORTH

LEGAL MAIL!

COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308
CAPITOL STATION
AUSTIN, TEXAS 78711

78711230808

LEGAL MAIL!

LEGAL MAIL!

