In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00186-CR**
_____

**MARK SHAWN HAMILTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 24409**
_____

**MEMORANDUM OPINION**

Mark Shawn Hamilton appeals his aggravated sexual assault with a deadly weapon conviction claiming in his first issue that the evidence was insufficient because T.J.[1] failed to inform another person within a year of the alleged offense. In his next seven issues, Hamilton argues that the trial court erred during the

_____

[1] For purposes of this appeal, we refer to several of the State's witnesses by their initials.

1

guilt/innocence phase of the trial by admitting extraneous offense evidence. Having concluded that the evidence sufficiently supports Hamilton's conviction and that the trial court did not err in its admission of the complained of extraneous offense evidence, we affirm the trial court's judgment.

## Background

In 2015, after speaking with an ex-girlfriend of Hamilton's, Captain Ricky Childers of the Polk County Sheriff's Office began an investigation into Hamilton's past romantic relationships. One of those persons was T.J., the complainant in this case, who was married to Hamilton from 2006 through 2009.

T.J. testified that Hamilton, a police officer for approximately thirty years, treated her very well when they began dating. They married in September 2006, and his demeanor began to change soon thereafter. While T.J. admitted to consensual vaginal intercourse with Hamilton throughout their relationship, she stated that Hamilton forced her to have anal intercourse against her wishes. T.J. told the jury that Hamilton had explained to her that because she was his wife, she should satisfy him any way he wanted regardless if she wanted to engage in those activities. T.J. estimated that Hamilton would demand anal intercourse approximately once a week, but then slowed to approximately once a month. According to T.J., Hamilton often accused her of having extramarital relationships and would become angry at her and

demand anal intercourse. Hamilton would also "inspect" her when she would come home to assure himself that she had not been with anyone else. According to T.J., Hamilton told her that because he was a police officer, if she tried to tell anyone, no one would believe her. Moreover, Hamilton also told T.J. you "couldn't rape your wife."

During the incident for which Hamilton was convicted, T.J. explained they had been arguing, and she went to her bedroom because Hamilton had also been cleaning a gun in another room and pointing it towards her, which made her feel uncomfortable. Hamilton then came into the bedroom and placed the gun on her thigh after having her take off her clothes. T.J. stated that she was scared partly because Hamilton had previously told her that while he worked in prisons, he had killed people and boasted about it. As a result, T.J. feared him because she was not aware of what he was capable of doing. T.J. explained that after Hamilton placed the gun on her thigh, he told her that she would need to answer questions truthfully to avoid being punished, which T.J. said always resulted in anal intercourse. T.J. testified that Hamilton then forced her to have anal intercourse against her will. T.J. said that it hurt and that she cried, "hollered," and asked him to stop, but he did not.

T.J. told T.S., her co-worker at the time, about the assault. T.J. explained that she had been crying and when she arrived at work, T.S. was the only other person

there, and she told T.S. what had happened. T.J. filed for a no-fault divorce because she said that she just wanted out of the relationship and that money was limited. However, she did seek a protective order following the divorce when Hamilton came to her job. She never contacted the police regarding the sexual assaults because she was scared and convinced that nothing could be done since Hamilton was a police officer.

T.S. testified that she worked with T.J. at a spa for about two years. T.S. testified it was not uncommon for T.J. to come to work upset; but, that on one day in particular, it was different because T.J. had walked straight to the back of the spa, and T.S. could tell that T.J. had been crying. T.S. explained that she asked T.J. what was wrong and that T.J. was "shaking and real nervous[.]" T.J. finally told T.S. that Hamilton had "forced her to have anal sex with him and he wouldn't stop and he hurt her and she got sick and she was just really upset about it[.]" T.S. could not specify the date T.J. told her about the assault, but that T.J. was married to Hamilton at the time. T.S. approximated the conversation took place in 2009. Captain Childers also interviewed T.S. According to Captain Childers, T.J. told T.S. that Hamilton sexually assaulted her.

In September 2015, Hamilton was arrested for sexual assault against T.J. According to Texas Ranger Ryan Clendennen, when Hamilton was located, he had

4

bags that were being packed, which Ranger Clendennen interpreted as Hamilton desiring to flee. After his arrest, Hamilton submitted to an interview during which he admitted to having had anal sex with T.J., but he claimed she consented to it. Defense counsel argued that during Hamilton's interview, he appeared shocked T.J. was making the allegations against him; however, Ranger Clendennen stated the interview involved "multiple people making allegations."

Captain Childers and Ranger Clendennen also spoke with Hamilton's prior spouses, J.F. and G.H., who were called to testify at the trial. G.H. testified that she was married to Hamilton for about twelve years. G.H. stated that she engaged in anal intercourse but did not want to because it was painful; however, she did so because Hamilton would become angry and take it out on everyone in the house, as well as claim that it was her duty as a spouse. G.H. recalled one incident in which Hamilton became angry and made G.H. have sex with him in a horse trailer on the side of the road while their minor children were inside the truck. G.H. also stated that during their marriage, Hamilton would become angry if he was reminded of G.H.'s past relationships, and he would then insist that she engage in sexual acts against her wishes as a result. After their divorce, Hamilton required G.H. to have sex with him before he would release their children to her. Similar to T.J., Hamilton accused G.H. of having affairs. When G.H. would come home late, Hamilton would require her to

5

strip and check her body to see if he could find evidence of her having had sex with someone else. Hamilton also told G.H. he killed two people while he worked in a prison.

J.F. was also married to Hamilton. J.F. stated that when Hamilton attempted anal intercourse with her, she actually passed out from the pain. After J.F. left Hamilton, she moved into his sister's house. J.F. described waking up one morning and finding Hamilton naked trying to get in bed with her and threatening to rape her. He told her no one would believe her because he was a police officer and that they were married, so she should just give into him. J.F. explained that she fought and eventually, his sister knocked on the door and J.F. ran out of the house screaming with her clothes torn. According to J.F., she did not report this incident, because she was afraid of him and he had threatened to harm her.

## Sufficiency of the Evidence

In Hamilton's first issue, he complains that the evidence at trial was insufficient to support his conviction for aggravated sexual assault with a deadly weapon because the evidence failed to prove that T.J. informed any person, other than Hamilton, of the alleged offense within one year after its commission. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a) (West 2011). The State argues that T.J.'s testimony supporting Hamilton's conviction was corroborated through the testimony

6

of Hamilton, G.H. and J.F. The State also asserts that T.J. made an outcry to her coworker, T.S., about the offense within a year of its commission.

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see also Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We do not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the trier of fact but rather defer to the credibility and weight determinations of the trier of fact in determining whether its inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most reasonable to the verdict.

7

*Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

A person commits the offense of aggravated sexual assault if that person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent and uses or exhibits a deadly weapon in the course of the same criminal episode. Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(iv) (West Supp. 2017).

Hamilton's statements acknowledging having had anal intercourse with T.J. during their marriage connects Hamilton to the alleged offense for he does not deny that it happened, only that T.J. consented to it. Moreover, the testimonies of G.H. and J.F. relating to Hamilton requiring anal intercourse during their marriages to him, despite their objection to it, also corroborates T.J.'s testimony that Hamilton forced her to have non-consensual anal intercourse. T.J. testified that during the assault, Hamilton exhibited a gun that made her more fearful. Therefore, T.J.'s testimony is not the only evidence that was heard at trial supporting the jury's verdict. Because T.J.'s testimony was corroborated by other sources, the evidence is sufficient to support Hamilton's conviction for aggravated sexual assault with a deadly weapon. *See Montgomery*, 369 S.W.3d at 192; *Clayton*, 235 S.W.3d at 778.

Article 38.07 of the Texas Code of Criminal Procedure states that a conviction for aggravated sexual assault is supportable on the uncorroborated testimony of the victim if the victim informed any person, other than the defendant, of the alleged assault within one year of the date of the assault. Tex. Code Crim. Proc. Ann. art. 38.07(a). But, because we have determined that T.J.'s testimony was corroborated by other evidence, article 38.07 does not apply. *See id.* Nevertheless, we also determine from the record that T.J. informed someone of the non-consensual anal intercourse within a year of its occurrence when she told T.S. about it at work. While the date of the offense, as well as the date T.J. told T.S. about the assault, cannot be specified, the evidence supports a reasonable inference that T.J. told T.S. about the assault within a year of its commission. *See Laster*, 275 S.W.3d at 517 (stating that the jury, as trier of fact, can accept or reject any or all of the testimony and make reasonable inferences therefrom).[2]

After considering all of the evidence in the light most favorable to the verdict, the evidence demonstrates that the jury could have found the essential elements of

---

[2] With regard to Hamilton's argument that the date in the indictment determines when the assault had to have occurred and when T.J. was required to tell T.S., the State need not allege a specific date in an indictment. *See Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997). Further, "the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Id*. at 256.

the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19. We conclude the evidence is sufficient to support Hamilton's conviction for aggravated sexual assault. We overrule his first issue.

## Admission of Extraneous Offense Testimony

Hamilton argues in his second through eighth issues that the trial court erred in admitting the extraneous offense testimony of G.H. and J.F. that Hamilton engaged in undesired anal intercourse, as well as other sexually abusive behaviors towards them. *See* Tex. R. Evid. 403, 404(b).

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). If the trial court's ruling was correct on any theory of law applicable to the case at the time of the ruling, we must uphold the judgment. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). The trial court does not abuse its discretion "unless its determination lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736.

Relevant evidence is admissible unless the unfair prejudicial effect of the evidence substantially outweighs its probative value. Tex. R. Evid. 403. "Rule 403 favors the admissibility of relevant evidence[.]" *Green v. State*, 971 S.W.2d 639, 645 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

10

Texas Rule of Evidence 404(b) prohibits extraneous offense evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). However, extraneous offense evidence may be admissible for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). This list is illustrative, not exhaustive. *See Martin*, 173 S.W.3d at 466. Accordingly, a party may introduce non-character conformity extraneous offense evidence if it serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Id.*

Specifically, extraneous offense evidence is admissible when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Therefore, we initially decide whether Hamilton raised the defensive theory of consent at trial.

Courts have recognized that a defendant's modus operandi, a defendant's "distinctive and idiosyncratic manner of committing criminal acts," is an exception to the general rule of excluding extraneous offense evidence if the modus operandi tends to prove a material fact at issue other than the propensity for committing

11

crimes. *See Casey*, 215 S.W.3d at 880–81. When a defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the complainant. *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). Modus operandi evidence has been used to prove lack of consent as a fact at issue when it is an element of the charged offense. *See Casey*, 215 S.W.3d at 880–81; *Martin*, 173 S.W.3d at 466–68. As lack of consent has been noted as "the essence of the offense of sexual assault[,]" it is an essential element of Hamilton's charged offense. *See Martin*, 173 S.W.3d at 466 & n.1.

In this case, the testimonies of G.H. and J.F. support that Hamilton has engaged in unwanted sexual activity, including anal intercourse, throughout several years and during his past marriages. The evidence also shows that Hamilton frequently demanded sexual acts from his spouses, as well as asserting power and control over them to instill fear on the basis that he was a police officer, threatening them as well as convincing them that no one would believe them and that nothing could be done. As the testimonies of G.H. and J.F. address Hamilton's modus operandi with regard to how he demanded and then forced sexual acts from others, the evidence was admissible under Rule 404(b) to refute Hamilton's defensive issues. *See Casey*, 215 S.W.3d at 880–81; *Martin*, 173 S.W.3d at 466–68; *see also* Tex. R. Evid. 404(b).

Next, we address whether the probative value of the extraneous offense evidence substantially outweighs the danger of unfair prejudice, beginning with the presumption that it does. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); *Grant v. State*, 475 S.W.3d 409, 420–21 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). It is the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Grant*, 475 S.W.3d at 420. When reviewing the trial court's balancing under Rule 403, we reverse only rarely and upon a clear demonstration of abuse of discretion. *See id.*

The following factors are considered relevant to the analysis under Rule 403: (1) the strength of the evidence in making a fact more or less probable, (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way, (3) the amount of time the proponent needed to develop the evidence, and (4) the strength of the proponent's need for the evidence to prove a fact of consequence. *Id.*

The first factor weighs strongly in favor of admissibility because the evidence was relevant to rebut Hamilton's defensive theory that T.J. consented to anal intercourse for which she later complained that Hamilton assaulted her. *See id.* The second factor also weighs towards the admissibility of the evidence. Hamilton was convicted of forcing T.J. to engage in anal intercourse and that he used or exhibited

13

a firearm forcing her to comply with the commission of the offense. Because neither G.H. nor J.F. claimed that Hamilton ever used a firearm against either of them and neither of them claimed that Hamilton assaulted them by forcing them to engage in anal intercourse, a rational jury would not be so influenced by the testimony of G.H. or J.F. that it would have been unable to limit its consideration of the evidence to its proper use. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996). Any danger the testimony may have impressed the jury in a prejudicial way is overshadowed by its probative value. *See Bargas v. State*, 252 S.W.3d 876, 892–93 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

The complained of testimony in front of the jury comprised only a portion of the trial. The length of time the State took to present the extraneous offense evidence was not considerable; and thus, this third factor tends to support the evidence's admission, or at most is a neutral factor. Last, the State's need for this testimony was significant, favoring admissibility under the fourth factor. As previously explained, this evidence discredits Hamilton's defensive theory that while admitting to having had anal intercourse with T.J., she willingly consented to it.

Considering the above factors, we conclude the probative value of the extraneous offense evidence was not substantially outweighed by unfair prejudice. The evidence was probative in assessing whether Hamilton forced T.J. to have anal

14

intercourse without her consent, thereby counteracting his defensive theory. We conclude the trial court did not abuse its discretion in admitting the evidence. *See* Tex. R. Evid. 403; *see also Montgomery*, 810 S.W.2d at 391–92. We overrule Hamilton's issues two through eight. Accordingly, we affirm the trial court's final judgment.

  AFFIRMED.

          _____

          CHARLES KREGER
              Justice

Submitted on November 7, 2017
Opinion Delivered March 21, 2018
Do Not Publish
Before McKeithen, C.J., Kreger and Johnson, JJ.