COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WILLIAM ESTRADA, | § | |
| | | No. 08-15-00271-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 205th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20130D01284) |
| | § | |

## O P I N I O N

Appellant, William Estrada, was indicted and convicted for committing the offense of murder by shooting Christian Duran with a firearm, a deadly weapon, with the intent to maintain or participate as a member of a criminal street gang, Los Midnight Locos (LML). The jury returned a sentence of confinement for 65 years. Appellant raises five issues on appeal, challenging the sufficiency of the evidence, the trial court's charge to the jury, and the admission of certain evidence during punishment. We affirm the trial court's judgment.

### BACKGROUND

Eighteen-year-old Christian Duran was shot outside his parents' home around 7:15 p.m. on January 28, 2013, and died. In the weeks before Duran's death, his parents' residence was tagged by the Los Midnight Locos (LML) gang. Duran was a member of the Sureno 13/Southside Locos

gang, and the tagging specifically referenced Duran by his gang moniker, "Crazy." Duran's tagged moniker, "Crazy," was crossed out. Months earlier, Duran had reportedly stabbed Jose Mendez, an LML gang member.

On January 28, 2013, Appellant and Raul Calvetti drove in Appellant's vehicle and picked up Benjamin Bafun, all of whom are LML gang members. Appellant and Bafun had witnessed Duran's alleged stabbing of Mendez.

Appellant took Bafun to his 3 p.m. dental appointment, and they later went to Calvetti's home. Appellant and Calvetti then left to drive Bafun home but Appellant, who was driving the vehicle, stopped near Duran's house when he passed by it and saw Duran's car. Bafun, who was in the back seat, did not know why they had stopped.

Bafun saw Appellant grab something out of the glove box and exit the vehicle, and Calvetti then moved into the driver's seat while the vehicle was still running. Bafun heard gunshots, and Appellant then ran back to the car and jumped into the back seat. Calvetti then drove away with Bafun and Appellant seated in the back of the vehicle.

The men stopped at Wing Stop and then a Walgreens store, and Appellant threw bullets out the window as they traveled. Walgreens surveillance footage showed Appellant purchased Gain detergent and bleach at 7:49 p.m. After the men left Walgreens, Appellant threw a gun in a trash can, and then went to the home of another gang member, Francisco Gonzalez, where Appellant showered and borrowed some clothes. Appellant then placed his clothing in a bag. Appellant, Calvetti, and Bafun left Gonzalez's home, and Appellant drove to a truck stop where he exited the vehicle and burned his clothes. Appellant then took Bafun to a bar.

At trial, Bafun testified to these facts, and stated that he, Appellant, and Calvetti did not

discuss what had happened except when Appellant "apologized not for telling me what had happened, like, without letting me know." Appellant told Bafun he was sorry for not telling Bafun what he and Calvetti had planned. Bafun testified that he had nothing to do with "it," that there had been no discussion with him regarding retaliation against Duran, and that he had never touched the gun. Police did not promise Bafun anything for his testimony, and neither he nor Calvetti were charged for Duran's murder. Police recovered from Appellant's vehicle a container of Gain detergent, and also recovered burned clothing near the truck stop. Cell phone tracking corresponded to the general times and locations reflected in the testimony, and placed Appellant in the area of Duran's street at 7:16 p.m. Gunshot residue, which can be transferred by contact with a person or something bearing gunshot residue, was confirmed on the back and right sleeve of Calvetti's black-hooded jacket, on the hood and back of Bafun's "hoodie" and on the front and back of his t-shirt, and on the front and inside waistband of Appellant's pants. Duran's father and some of his neighbors testified regarding their observations and what they heard at the time of the shooting.

## DISCUSSION

Appellant presents five issues for our consideration. In his first issue, Appellant complains that the evidence does not support his conviction because "the testimony of the accomplice witness" that Appellant was the shooter was not corroborated by other non-accomplice evidence that tended to connect him to the offense. Appellant also asserts that the evidence is legally insufficient to support a finding that he was a party to the offense. In Issue Two, Appellant complains that the trial court failed to instruct the jury that Bafun was as a matter of law an accomplice witness. In Issue Five, Appellant complains that the evidence was insufficient to

3

show he acted with the requisite intent to establish, maintain, or participate as a member of a criminal street gang.  *See* TEX. PENAL CODE ANN. § 71.02(a)(1)(West Supp. 2017).

In addressing these three issues, we first determine whether Bafun was an accomplice witness.  The accomplice-witness statute provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense.  TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005).  Because Bafun was not an accomplice, the State was not required to corroborate his testimony.

A person is an accomplice if he participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state.  *Druery v. State*, 225 S.W.3d 491, 498 (Tex.Crim.App. 2007).  To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promoted the commission of the offense with which the defendant is charged.  *Id*.  However, a witness is not an accomplice witness merely because he knew of the offense and did not disclose it, or even if he concealed it.  *Id*.  Additionally, a witness's mere presence at the scene of the crime does not render that witness an accomplice witness.  *Id*.  Nor does complicity with an accused in the commission of another offense apart from the charged offense render that witness's testimony that of an accomplice witness.  *Id*.

A witness can be an accomplice as a matter of law or as a matter of fact.  *Ash v. State*, 533 S.W.3d 878, 884 (Tex.Crim.App. 2017).  "Whether a defendant is entitled to an accomplice-witness instruction is a function of the evidence produced at trial."  *Id*.; *Zamora v. State*, 411 S.W.3d 504, 510 (Tex.Crim.App. 2013).

4

If the evidence presented by the parties is conflicting and it remains unclear whether the witness is an accomplice, the trial court should allow the jury to decide whether the inculpatory witness is an accomplice witness as a matter of fact under instructions defining the term "accomplice." *Druery*, 225 S.W.3d at 498–99. Thus, when the record contains evidence that the witness may have been an accomplice, the trial court should submit the issue to the jury to decide whether the witness was an accomplice as a matter of fact. *Ash*, 533 S.W.3d at 884.

A witness is an accomplice as a matter of law when: (1) the witness has been charged with the same offense as the defendant or a lesser-included offense; (2) the State charges a witness with the same offense as the defendant or a lesser-included of that offense, but dismisses the charges in exchange for the witness's testimony against the defendant; or (3) the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice. *Ash*, 533 S.W.3d at 886. A trial judge has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there exists no doubt that the witness is an accomplice. *See Druery*, 225 S.W.3d at 498.

Appellant requested that the trial court instruct the jury in its charge that Bafun was an accomplice witness as a matter of law, and the trial court overruled the request. In its charge the trial court defined "accomplice witness" and in part instructed the jury as follows:

> You are instructed that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. Proof that the Defendant was merely present in the company of the accomplice shortly before or after the time of the offense that was committed is not in itself sufficient corroboration of the accomplice's testimony.
>
> . . .
>
> However, if you find, beyond a reasonable doubt, that an offense was committed

5

and you further believe from the evidence that the witness, Benjamin Bafun, was an accomplice, or you have a reasonable doubt whether he was or not, as that term is defined in the foregoing instructions, then you cannot convict the defendant upon the testimony of Benjamin Bafun unless you further believe that there is other evidence in the case, outside of the testimony of Benjamin Bafun, tending to connect the defendant with the offense charged in the indictment, and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty.

The evidence regarding Bafun shows that before the shooting, Bafun had no discussion regarding getting even with Duran, and he was uncertain why Appellant stopped at Duran's house while driving Bafun home. Bafun observed Appellant retrieve something from the glove box and exit the vehicle. After Calvetti entered the driver's seat, Bafun heard gunshots, and observed Appellant running back to the car and entering the back seat. Although present, Bafun never touched the gun, and did not help dispose of the Appellant's clothing or the gun. According to Bafun, he had no discussions about getting even with Duran.

Bafun was described as being 5'11" and much bigger than Appellant and Calvetti, and both Bafun and Appellant were lighter skinned than Calvetti. Appellant was approximately 6'1" or 6'2," and Calvetti was estimated to be 5'9" or 5'10" tall, and thinner than Bafun.

One witness described the runner as thin and a bit tall, about 5'10," and "flying," after shots were fired. Another witness who heard the shooting described the running man as 5'8" to 5'11," and not "chunky." A third witness who saw the shooting described the shooter as having a height of 5'7" to 5'9."

After Duran was shot, Appellant entered the back seat of his vehicle where Bafun was seated while Calvetti drove. The evidence showed that gunshot residue, such as that identified as being present on the hood and back of Bafun's clothing, may be transferred by touch and may have been transferred from another source at another time, even as much as one year earlier. And

6

although Bafun admitted his gang affiliation with LML and was confirmed by police to be a gang member, the evidence merely showed Bafun's presence, and no affirmative act of assistance in committing Duran's murder.

This and other evidence does not show that Bafun affirmatively assisted in committing the offense of murder. Moreover, Bafun was not an accomplice as a matter of law because: (1) he was not charged with either the same offense as Appellant or a lesser-included offense; (2) the State did not dismiss such charges in exchange for Bafun's testimony against Appellant; and (3) the evidence is not so "uncontradicted or so one-sided" that any reasonable juror would have concluded that Bafun was an accomplice as a matter of law. *See Ash*, 533 S.W.3d at 886. The trial court was therefore under no duty to instruct the jury that Bafun was an accomplice witness as a matter of law. *Druery*, 225 S.W.3d at 498. Issue Two is overruled.

*Legal Sufficiency of the Evidence*

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S.Ct. at 2789. The reviewing court's duty is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex.Crim.App. 2017). When the record supports contradicting inferences, the court "must presume that the jury resolved any such conflicts

7

in favor of the verdict, even if not explicitly stated in the record." *Id.* We review "all of the evidence" and consider evidence "both properly and improperly admitted." *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex.Crim.App. 2016). When the jury returns a general verdict and the evidence supports a guilty finding under any of the allegations submitted, we will uphold the verdict. *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App. 1992).

*Evidence of Principal Actor Status*

The accomplice-witness statute provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14. Because Bafun was not an accomplice, the State was not required to corroborate his testimony.

Bafun's testimony, without corroboration, is legally sufficient to support the jury's verdict if it believed Appellant to be guilty as the principle actor. In addition to the evidence recited above, the jury had before it evidence that Appellant had a motive for retaliating against Duran after he witnessed Duran's attack of Jose Mendez, another LML gang member, that Appellant had apologized to Bafun after killing Duran for not informing Bafun of Appellant's and Calvetti's plan, that Appellant had disposed of the gun and destroyed other evidence, and had other evidence to consider, including cell phone records that placed Appellant near the Duran residence at relevant times.

The Texas Penal Code provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a)(West 2011). Each party

8

to an offense may be charged with commission of the offense and each party to an offense may be charged and convicted without an allegation that he acted as a principal or accomplice, distinctions which have been abolished. *See* TEX. PENAL CODE ANN. § 7.01(b), (c)(West 2011). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2)(West 2011).

Evidence can be sufficient to convict under the law of parties where a defendant "is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App. 1996) (op. on reh'g). "In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985)). Additionally, circumstantial evidence may be used to prove identity and party status. *See id.*; *Jenkins*, 493 S.W.3d at 599; *Gross v. State*, 380 S.W.3d 181, 186 (Tex.Crim.App. 2012). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient." *Jenkins*, 493 S.W.3d at 599. However, mere presence at the scene of the crime, or even flight from the scene, without more, is insufficient to support a conviction as a party. *Gross*, 380 S.W.3d at 186.

The trial court's charge instructed the jury that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person

9

to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). The charge also instructed the jury that mere presence at the scene of an offense will not make a person a party to an offense.

Applying the law of parties to the offense of murder under Section 19.02(b)(1) and to the evidence as it relates to the indictment, Appellant is criminally responsible as a party to this offense if, acting with the intent to promote or assist in the commission of the murder of Christian Duran by Raul Calvetti, Appellant solicited, encouraged, directed, aided, or attempted to aid Raul Calvetti to commit the murder, and Raul Calvetti, intentionally or knowingly caused Christian Duran's death by shooting him with a firearm. TEX. PENAL CODE ANN. § 19.02(b)(1)(West 2011). The trial court instructed the jury:

> If you unanimously find, beyond a reasonable doubt, that on or about January 28, 2013, in El Paso County, Texas, the Defendant, William Estrada, did then and there with the intent to maintain or participate as a member of a criminal street gang, to wit: Los Midnight Locos ("LML"), commit the offense of Murder against Christian Duran, by shooting Christian Duran with a firearm; and that the defendant did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of or immediate flight from said offense,
>
> OR
>
> If you find from the evidence beyond a reasonable doubt that on or about January 28, 2013, in El Paso County, Texas, the Defendant, William Estrada, with the intent to maintain or participate as a member of a criminal street gang, to wit: Los Midnight Locos ("LML"), acting as a party, by soliciting, encouraging, directing, aiding or attempting to aid Raul Calvetti, did then and there commit the offense of Murder as a party against Christian Duran by driving Raul Calvetti to Christian Duran's house so that Raul Calvetti could murder Christian Duran by shooting him with a firearm,
>
> THEN you must find the defendant "guilty" (Verdict Form B).

The jury could have believed that Appellant was guilty as a party based on evidence that he and fellow LML gang member Calvetti planned Duran's death, that Appellant acted to promote or assist commission of the offense by driving Calvetti to Duran's residence, and if believed by the jury, that Calvetti was the shooter based on the witness's descriptions. Viewed in the light

10

most favorable to the verdict, deferring to the jury's determinations of the weight to be given the evidence and credibility of the witnesses, the evidence supports the jury's verdict of guilt, whether the jury believed Appellant was guilty as the principal actor or as a party. Issue One is overruled.

*Evidence of Requisite Intent*

In Issue Five, Appellant contends the evidence was insufficient to prove that he committed the charged offense with the intent to maintain or participate as a member of a criminal street gang because no evidence shows that Appellant, Bafun, and Calvetti or any other LML acted with intent to participate in a gang when Duran was murdered. Appellant asserts the legal sufficiency standard in *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 applies in making this determination.

In its charge, the trial court instructed the jury that it could find Appellant guilty as a principal actor or a party if Duran's murder was committed with the intent to maintain or participate as a member of the Los Midnight Locos (LML) criminal street gang. Evidence and testimony showed that: (1) LML was a criminal street gang having a "history of criminal offenses ranging from narcotics possession to distribution, to graffiti, thefts, aggravated assaults, assaults, robberies, engaging in organized criminal activity, to include murder[;]" (2) Appellant, Bafun, and Calvetti were confirmed gang members of LML; (3) Duran was a member of a rival criminal street gang, Southside Locos; (4) Appellant had witnessed Duran's stabbing attack on Jose Mendez, who was Appellant's fellow LML gang member; (5) prior to his death, Duran's residence had been tagged by LML which included the writing out of Duran's gang monker, "Crazy," which was also crossed out; and (6) after shooting Duran, Appellant apologized to Bafun because Appellant and Calvettii had not informed him of their plan beforehand. Viewing this evidence in the light most favorable to the verdict, we conclude any rational trier of fact could have found the essential

11

elements of the crime beyond a reasonable doubt to include a determination that Appellant committed Duran's murder with the intent to maintain or participate as a member of a criminal street gang. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App. 1997). Issue Five is overruled.

In Issue Three, Appellant contends the trial court's charge erroneously instructed the jury that it could find Appellant guilty either as the principal actor or as a party because neither theory was clearly supported. In support of this contention, Appellant contends the evidence was insufficient to allow the jury to determine that he was guilty as a party, and in choosing to permit the jury to determine whether Appellant was guilty as a party, the trial court should have required the jury to decide unanimously whether Appellant was guilty as a principal or as a party.

An instruction on the law of parties may be given whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *Ladd v. State,* 3 S.W.3d 547, 564-65 (Tex.Crim.App. 1999). The law of parties need not be pleaded in the indictment. *Marable v. State*, 85 S.W.3d 287, 287 (Tex.Crim.App. 2002).

As we have determined above, the evidence was sufficient to sustain Appellant's conviction as a principal actor or as a party to the commission of the offense of murder. Therefore, we cannot conclude the trial court erred in instructing the jury on the law of parties. And if, as Appellant asserts, there was no evidence tending to show his guilt as a party, the jury almost certainly would not have relied on the trial court's law-of-parties instruction in arriving at its verdict, basing its verdict instead on the evidence tending to show his guilt as the principal actor. *See Ladd,* 3 S.W.3d at 565. The trial court did not err in submitting the principal-actor and party theories to the jury. *See Goff v. State*, 931 S.W.2d 537, 544-45 (Tex.Crim.App. 1996).

12

Regarding Appellant's contention that the trial court erred when it instructed the jury on the law of parties because it did not instruct the jury that it must unanimously decide whether Appellant was guilty as a principal actor or as a party, the Court of Criminal Appeals has ruled that where, as in this case, "the evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense – *either* as a principal actor *or* under some theory of party liability – but there remains evidentiary play with respect to his precise role in that offense," it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party and, if the latter, what his exact party accountability might be. *Leza v. State*, 351 S.W.3d 344, 357 (Tex.Crim.App. 2011)(agreeing with courts of appeal that "the Legislature did not intend that a jury should have to achieve unanimity with respect to whether an accused was guilty of capital murder as a principal actor or as a party, or with respect to any particular statutory alternative by which he might be found liable as a party"). We agree. Because the trial court did not err in providing the complained-of instructions to the jury, Issue Three is overruled.

In Issue Four, Appellant contends the trial court erred when it admitted in evidence during the punishment phase of trial Appellant's hand-written letter. In a portion of the letter, Appellant states:

> When I get out ima [sic] finish my school and try to open up my own business. I've always bin [sic] a self made man. Never needa [sic] anyone to get me what I needed. If I can't do it then I have no choice but to get back to the basics. *Ain't nothing I know better than bleeding the block.* I really don't want to but you know once your yoused [sic] to living a sertain [sic] way its [sic] hard getting comfturble [sic] with anything less.

After the State presented the letter to the trial court for its consideration, Appellant's counsel stated, "[I]t worries me from a relevancy perspective[.]" He later asserted outside the

13

presence of the jury that the prejudice of admitting the letter far outweighed its probative value because the meaning of "bleeding the block" was unknown, and noted that it would require speculation. After the trial court ruled that the letter was admissible, Appellant raised a speculation objection to the inclusion of the sentence, "Ain't nothing -- I know better than bleeding the block[,]" noting that he believed "the reference really is . . . more of a Shawshank Redemption type of thing, selling goods and stuff like that[,]" but expressed concern that the jury could believe it was a reference to violence in the absence of a gang or jail expert to explain the term, and argued that the prejudice of the sentence far outweighed its probative effect. Appellant also informed the trial court that if it admitted the letter in evidence, he objected to any attempt by the State to explain the term to the jury. The trial court overruled the objection.

Unlike his contentions at trial, on appeal, Appellant contends the jury likely interpreted his statement as meaning that he would "continue to seek blood or injure or kill in the future." He argues that the trial court erred in admitting the letter because its meaning is unclear, and thus it was not probative, and because the evidence had the tendency to both "suggest a decision on an improper basis" and be given undue weight by the jury which, purportedly, was not "equipped" to evaluate the probative force of the evidence. Asserting that there is no fair assurance that this evidence did not influence the jury, Appellant asserts his substantial rights were affected, and he was harmed by the admission of this evidence. We disagree.

*Standard of Review*

The trial court has broad discretion to determine the admissibility of evidence at the punishment phase of trial. *Cooks v. State,* 844 S.W.2d 697, 735 (Tex.Crim.App. 1992). Accordingly, we review a trial court's decision to admit or exclude evidence during the punishment

14

phase of a trial under an abuse of discretion standard. *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App. 1996). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003).

*Relevance*

Relevant evidence is generally admissible but irrelevant evidence is not. TEX. R. EVID. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States or Texas Constitution; a statute; these rules; or other rules prescribed under statutory authority. Irrelevant evidence is not admissible."). Unlike the guilt phase of trial, during the punishment phase there are "no distinct 'facts ... of consequence' that proffered evidence can be said to make more or less likely to exist." *Ellison v. State*, 201 S.W.3d 714, 718–19 (Tex.Crim.App. 2006)(citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App. 1999)).

Admissibility of evidence at punishment is more a matter of policy than of "logical relevance." *Ellison*, 201 S.W.3d at 719. During the punishment phase, "[t]he jury is concerned ... with evaluating a defendant's background and character independent of the commission of the crime on trial." *Sparkman v. State*, 580 S.W.2d 358, 360 (Tex.Crim.App. 1979). In this phase, the State and the defendant may offer evidence as to any matter the court deems relevant to sentencing, including but not limited to the defendant's general reputation as well as his character. TEX. R. EVID. 401; TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1)(West Supp. 2017). Determining what is relevant is a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case. *McGee v. State,* 233 S.W.3d

315, 318 (Tex.Crim.App. 2007)(quoting *Rodriguez,* 203 S.W.3d at 842); *Rogers*, 991 S.W.2d at 265.

The test for relevancy is much broader during the punishment phase because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range. *See Murphy v. State,* 777 S.W.2d 44, 63 (Tex.Crim.App. 1989)(op. on reh'g). However, the trial court must still restrict the admission of evidence to that which is relevant to sentencing and must operate within the bounds of the Texas Rules of Evidence, including Rule 403. *Ellison,* 201 S.W.3d at 722.

*Rule 403*

If the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence, the evidence is inadmissible under Rule 403. TEX. R. EVID. 403; *see Davis v. State*, 329 S.W.3d 798, 806 (Tex.Crim.App. 2010); *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App. 1991)(op. on reh'g). The rule favors the admission of all relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Threadgill v. State*, 146 S.W.3d 654, 670–71 (Tex.Crim.App. 2004). Consequently, the defendant bears the burden of demonstrating that the danger of unfair prejudice substantially outweighs the probative value. *See Grant v. State,* 475 S.W.3d 409, 420–21 (Tex.App.--Houston [14th Dist.] 2015, pet. ref'd)).

The term "probative value" refers to the inherent probative force of an item of evidence— that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Davis v. State*, 329

S.W.3d 798, 806 (Tex.Crim.App. 2010)(citations omitted). The term "'[u]nfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* All testimony and physical evidence are likely be prejudicial to one party or the other. *Id.* Rule 403 is applicable only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Id.* In conducting its Rule 403 determination, the trial court or a reviewing court considers, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004).

As determined by the courts of this state, character evidence may exist in many forms, including a defendant's choice of tattoos, *Conner v. State*, 67 S.W.3d 192, 201 (Tex.Crim.App. 2001), or a defendant's writings such as a letter, *Green v. State*, 934 S.W.2d 92, 104 (Tex.Crim.App. 1996). In his hand-written letter that was admitted in evidence during the punishment phase of trial, Appellant specifically addresses his future intentions after being freed from incarceration. Although the letter expresses Appellant's willingness to return to a familiar way of life by "bleeding the block," it also expresses Appellant's desire to engage in business. Appellant's letter was prejudicial, but it was not unduly so, as it was highly probative of his character.

This evidence was relevant because it was helpful to the jury in determining an appropriate sentence for Appellant, it was probative of Appellant's character, and the probative value of the letter was not substantially outweighed by the danger of undue prejudice or misleading the jury. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). The trial court's evidentiary ruling was not

17

erroneous.

Even if admission of this evidence was erroneous, it was non-constitutional error that did not harm Appellant's substantive rights and was harmless in light of the other evidence which showed Appellant's gang-related planning and execution of Duran's murder. *See Walters v. State*, 247 S.W.3d 204, 221 (Tex.Crim.App. 2007). Issue Four is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

YVONNE T. RODRIGUEZ, Justice

June 29, 2018

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)

18