

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00018-CR

---

CHARLES ALLEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 460th District Court
Travis County, Texas[1]
Trial Court No. D-1-DC-23-904072, Honorable Selena Alvarenga, Presiding

---

April 6, 2026

## MEMORANDUM OPINION

### Before PARKER, C.J., and DOSS, and YARBROUGH, JJ.

A jury convicted Appellant, Charles Allen, of aggravated sexual assault and burglary of a habitation.[2] The trial court found "true" the enhancement allegation that Appellant is a repeat felony offender and assessed his punishment at confinement for life

---

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We apply the Third Court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE §§ 22.021, 30.02. The two charges arose from a single event.

for the aggravated sexual assault charge and life for the burglary charge. In two issues on appeal, Appellant asserts that the trial court abused its discretion by admitting a photo lineup over his objection. We affirm.

**BACKGROUND**

Appellant does not challenge the sufficiency of the evidence supporting his convictions. Therefore, we limit our discussion to the evidence that is necessary to understand the issue he raises on appeal.

In June 2022, the complainant traveled alone to Austin to attend a work-related training and stayed at a hotel along I-35. After returning to her room one evening, she heard a knock at the door and, believing it to be housekeeping responding to a request she had just made at the front desk, opened the door. A man she did not know immediately forced his way inside despite her attempt to close it.

The man quickly overpowered the complainant, pinned her to the floor, and placed her in a chokehold. He then forced her onto the bed and sexually assaulted her, penetrating her vaginally and anally despite her efforts to resist and escape. When hotel staff arrived, the assailant left the room. The complainant immediately reported the assault, contacted law enforcement, and later underwent a sexual assault forensic examination before returning home the next day.

At trial, the State presented multiple, independent sources of evidence identifying Appellant as the assailant. A hotel housekeeper encountered Appellant exiting the complainant's room immediately before the complainant emerged and reported the assault; the housekeeper later selected Appellant from a photo lineup. Surveillance

2

footage from a nearby Target located within walking distance of the Embassy Suites, together with footage from the hotel, showed Appellant moving in close temporal and physical proximity to the complainant, entering the hotel shortly after her, and later exiting through the rear. In both locations, Appellant was observed wearing distinctive red basketball shorts and a black tank top.

Law enforcement located Appellant later that evening in the vicinity of the hotel; he fled on foot when officers attempted to detain him and was arrested nearby. Officers recovered a shopping cart containing Appellant's clothing, including red basketball shorts and a black tank top, as well as a debit card bearing Appellant's name. The clothing and cart were identified by Appellant's wife as belonging to him. Appellant was identified in court by multiple witnesses, including law enforcement. Finally, forensic testing of biological evidence collected during the sexual assault examination revealed a male DNA profile consistent with Appellant, with testing indicating it was 16.5 octillion times more likely the DNA originated from Appellant than from an unrelated individual.

## ANALYSIS

By two issues, Appellant argues the trial court abused its discretion in admitting the photographic lineup administered to the witness who saw the suspect flee the hotel room where the assault occurred. In his first issue, he contends this violated Rule of Evidence 901. In his second, he argues it violated Rule 403. We resolve the issues against Appellant.

3

<u>Standard of Review</u>

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

<u>Rule of Evidence 901</u>

Rule 901 governs the authentication requirement for the admissibility of evidence. TEX. R. EVID. 901. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce some evidence to support a finding that the item is what the proponent claims it is. *Fowler v. State*, 544 S.W.3d at 848 (Tex. Crim. App. 2018). Evidence may be authenticated by different methods, including testimony from a witness with knowledge that an item is what it claims to be. TEX. R. EVID. 901(b)(1).

The authentication requirement "is a liberal standard of admissibility." *Fowler*, 544 S.W.3d at 848. Conclusive proof of authenticity before allowing admission of disputed evidence is not required. *Id*. The trial court's function as gatekeeper is to "decide simply whether the proponent has supplied sufficient facts to support a reasonable determination by the jury that the proffered evidence is what the proponent claims." *Alexander v. State*, Nos. 14-17-00392-CR, 14-17-00393-CR, 2018 Tex. App. LEXIS 9231, at *15 (Tex. App.—Houston [14th Dist.] Nov. 13, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). "It is up to the jury to make the final determination of whether the evidence is what the proponent claims it to be." *Barnes v. State*, No. 09-23-00387-CR, 2025 Tex. App. LEXIS

4

7948, at *27 (Tex. App.—Beaumont Oct. 15, 2025, no pet.) (mem. op., not designated for publication) (citing *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015)).

The State argues Appellant failed to preserve error regarding authentication of the photographic lineup because he did not make a timely, specific objection on authentication grounds under Texas Rule of Evidence 901. Appellant initially objected to the evidence under Rule 403. When he asked to take the witness on voir dire, the court asked "[w]ith respect to?" and counsel answered, "The failure to have signed it, the authentication of the document." The objection under Rule 403 and the stated reason for the objection (i.e. authenticity under Rule 901) were not the same but Appellant did mention his authenticity concerns prior to admission of the exhibit. While it is not entirely clear, the trial court arguably could have understood Appellant to be objecting to the evidence under both Rule 403 and Rule 901. Further discussion was held concerning the reason for the trial court's ruling but ultimately, the court overruled Appellant's objections.

Assuming the error was preserved, the exhibit was properly authenticated by the housekeeper's testimony that she recognized the document, and that it contained her handwriting, her initials, and her signature on the first page. While the housekeeper testified the lineup she viewed was in black and white, a detective later testified the lineup she was shown was in color, as was the exhibit admitted at trial.[3] Further, while Appellant argues the exhibit was admitted in violation of Rule 901 because it lacked the witness's

---

[3] There was also testimony concerning the positioning of Appellant's picture in the lineup and that it differed from another exhibit.

5

signature on other parts of the document and the photos were unnumbered, ostensibly making it impossible to connect her identification of 'photo number 6' to Appellant, those facts go to the weight rather than admissibility of the evidence.[4]  *Graham v. State*, No. 06-24-00067-CR, 2024 Tex. App. LEXIS 6912, at *6–7 (Tex. App.—Texarkana Sept. 20, 2024, no pet.) (mem. op., not designated for publication) (finding no abuse of discretion in admitting photo lineup when witness identified the exhibit as the photo lineup shown to him by police, that it contained his handwriting, and that he had circled the defendant's photo).  The officer who administered the photo lineup testified the housekeeper picked out the same photograph, "[n]umber six," twice.

Lastly, after testifying, the witness contacted the prosecutor stating the man in court was not the same person she saw at the hotel, telling him the man's size and complexion were different than the man she saw that night.  This was disclosed to the defense and stipulated to the jury.  In the written stipulation, Appellant conceded the witness "authenticated the signed instructions . . . as well as the photos themselves and her selection of the person she observed when he opened the door to the hotel room" of complainant.

We find the trial court did not violate Rule 901 when it admitted the lineup into evidence.  *See Alexander*, 2018 Tex. App. LEXIS 9231, at *13 ("[t]here is no abuse of discretion if the trial court 'reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified.'").  *See also Haq v. State*, 445 S.W.3d

---

[4] There was also some testimony that Appellant's photo was not in the sixth position as the witness indicated.  This again goes to the weight rather than the admissibility of the evidence and the jury was free to believe some, all, or none of the witnesses' testimony.  *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

330, 337 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (finding no abuse of discretion when witnesses testified the lineup was the photo array shown to them by a deputy and they identified their signatures next to the picture they selected).

Rule of Evidence 403

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or presentation of cumulative evidence. TEX. R. EVID. 403. When reviewing a ruling under Rule 403, appellate courts rarely reverse and only after a clear abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Courts typically consider the following factors in determining the admissibility of evidence under Rule 403: (1) the probative value of the evidence; (2) the evidence's potential to impress the jury in some irrational way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Evidence is presumed to be more probative than prejudicial under Rule 403, and the opponent of the evidence has the burden to show otherwise. *Grant v. State*, 475 S.W.3d 409, 420 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Applying the relevant factors, we conclude the exhibit had some probative force regarding Appellant's identity and consciousness of guilt since it related directly to the key issue of identity. Further, the evidence would not suggest a decision on improper basis, particularly given issues with the photo lineup and the later stipulation about the

7

housekeeper's inability to accurately identify Appellant by the time of trial.[5]  Next, while the presentation of the evidence consumed approximately 40 pages of the record, this was a lengthy trial spanning more than 12 volumes of record for the guilt-innocence phase.  Comparatively, the time it took for presentation of the evidence concerning the lineup was marginal.  Also, the testimony was not repetitive since the housekeeper was the only person other than the complainant to have seen the perpetrator at the time of the assault.  Lastly, the jury was sufficiently equipped to evaluate the evidence with proper jury instructions, and we presume it did so.  *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("[o]n appeal, we generally presume the jury follows the trial court's instruction in the manner presented").

Given the foregoing, we cannot conclude the trial court abused its discretion in admitting the photographic lineup under Rule 403.

Harm Analysis

Even if we assume the trial court erred in admitting the photo lineup, we cannot agree with Appellant that any such error was harmful.  Erroneous admission of photographic evidence is non-constitutional error governed by Rule of Appellate Procedure 44.2(b).  *See* TEX. R. APP. P. 44.2(b).  In considering harm, we review the entire record to determine whether the error had more than a slight influence on the verdict.  *Simmang v. State*, No. 03-11-00455-CR, 2013 Tex. App. LEXIS 11529, at *30–

---

[5] By the time of trial, more than two years had passed from the time of the assault, and the witness had suffered a stroke.  She testified the stroke had not affected her speech or memory.  When asked whether she believed she could still recognize the person today, she answered, "[m]ore or less, but not— not quite confident."

31 (Tex. App.—Austin Sept. 11, 2013, pet. ref'd) (mem. op., not designated for publication). The inquiry is whether there has been such a variance in proof as to affect the substantial rights of the accused. *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If we find the error did have more than a slight influence, we must conclude that the error affected the defendant's substantial rights in such a way as to require a new trial. *Lopez v. State*, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.). If we have grave doubts about its effect on the outcome, we should require a new trial. *Id*. Otherwise, should we find the influence slight, we disregard the error. *Id*.

Appellant argues the erroneous admission substantially affected the jury's verdict because identity was the central issue. Without the housekeeper's identification, he says, the jury would have relied solely on the complainant's 80% confident identification and DNA evidence. He claims the faulty identification evidence created unfair prejudice and misled the jury. We disagree.

First, we acknowledge the housekeeper contacted the prosecutor stating the man in court was not the same person she saw at the hotel. That information was disclosed to the defense and stipulated to the jury. A written stipulation appears in the record. The jury had that information prior to rendering its verdict.

To that, we add that the evidence of Appellant's guilt was overwhelming. The complainant identified Appellant with 80% certainty. *See Polk v. State*, No. 01-18-00450-CR, 2019 Tex. App. LEXIS 2621, at *15–16 (Tex. App.—Houston [1st Dist.] April 2, 2019,

9

pet. ref'd) (mem. op., not designated for publication) (finding any error harmless where evidence included identification of defendant by the victim). She also identified him in surveillance footage and identified him in court. Appellant's wife identified him in surveillance footage and identified the clothes he wore in that footage as his. Video placed Appellant at Target at the same time as the complainant and showed him following her into the hotel shortly before the assault. This type of evidence may be used to prove identity. *See Pantaleon v. State*, 699 S.W.3d 641, 652 (Tex. App.—Texarkana 2024, pet. ref') (witness specifically testified that she saw the defendant on the day of the assault wearing the same clothes and driving the same car as the suspect in the surveillance video). DNA evidence indicated it was 16.5 octillion times more likely the DNA originated from Appellant than from an unrelated individual. *See Roberson v. State*, 16 S.W.3d 156, 167–69 (Tex. App.—Austin 2000, pet. ref'd) (the State can prove identity using DNA evidence). Lastly, Appellant ran from police at "[a] full run," indicating a consciousness of guilt. *See Luke v. State*, No. 07-17-00199CR, 2018 Tex. App. LEXIS 8570, at *9–10 (Tex. App.—Amarillo Oct. 19, 2018, no pet.) (recognizing that attempting to flee from police indicates a consciousness of guilt).

Further, the State did not emphasize the photographic lineup in its argument to the jury. It pointed out some of the issues concerning the witness's testimony and the lineup but reiterated to the jury that it could give it "whatever weight you think it deserves." *See Kossie v. State*, No. 14-14-00991-CR, 2016 Tex. App. LEXIS 3459, at *6–7 (Tex. App.—Houston [14th Dist.] April 5, 2016 ) (mem. op., not designated for publication) (finding risk of harm minimal when, among other things, the State did not emphasize the challenged statements).

After examining the record as a whole, we have fair assurance that any error in the admission of the photographic lineup did not influence the jury or had but a slight effect. Accordingly, any error in admitting the evidence was harmless.

## CONCLUSION

Having overruled Appellant's issues, we affirm the judgment of the trial court.

Alex Yarbrough
Justice

Do not publish.